IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSE SOTO,

        Plaintiff,

    v.

CATHY JESS,

        Defendant.

OPINION AND ORDER

11-cv-567-slc

---

*Pro se* plaintiff and prisoner Jose Soto has filed a motion for a temporary retraining order, injunctive relief, and sanctions for defendant Cathy Jess's alleged breach of the parties' 2013 settlement agreement in this case relating to Soto's custom orthotics and shoes. Dkt. 177. For the reasons stated below the motion will be denied and no sanctions will be ordered.

## BACKGROUND

On November 27, 2013, Soto, who was then represented by counsel,[1] asked the court to dismiss his case pursuant to Fed. R. Civ. P. 41(a)(2) provided that the court "retain jurisdiction solely to enforce the Settlement Agreement . . . and to hear any causes of action relating to or arising from the breach of the Settlement Agreement." Dkt. 148. I granted Soto's request on December 2, 2013. Dkt. 149. According to the settlement agreement

> DOC will provide Jose Soto custom orthotics, at DOC's cost and without any monetary contribution by Soto, consistent with the plan outlined in the UW Podiatry report from Soto's 10/25/2013 appointment. These custom orthotics shall be available to Soto to wear while he is housed in general population regardless of the DOC institution Soto is currently housed in or transferred to at a later date.
>
> Replacement or refitting of the orthotics will be done in accordance with the opinions of a podiatrist not employed by the DOC. At a minimum, Soto will be seen by a podiatrist not employed by the

---

[1] Attorneys Don Schott and Khalaf Khalaf agreed to represent plaintiff in this case *pro bono*. Their commitment terminated with judgment on the merits, so Soto now is proceeding *pro se.*

DOC every five years to assess the need for replacement or refitting of the custom orthotics.

If the custom orthotics provided to Soto are removable from shoes rather than being built into shoes, Soto can buy his own shoes from any vendor, including vendors outside of the canteen catalogs, so long as the vendor is approved by the Department of Adult Institutions and the shoes comply with the DAI's policy on shoes. Such shoes (separate from the custom orthotics) must be purchased by Soto using his own funds.

If the custom orthotics provided to Soto are not removable from shoes and an additional pair of shoes would not exceed Soto's property limitations, this standing order does not prevent Soto from buying an additional pair of shoes from any vendor, including vendors outside of the canteen catalogs, so long as the vendor is approved by the Department of Adult Institutions and the shoes comply with the DAI's policy on shoes. Such shoes must be purchased by Soto using his own funds.

If Soto is housed in segregation at any DOC institution, he shall be provided with black Velcro shoes and arch support inserts, at DOC's cost and without any monetary contribution by Soto.

DOC retains the right to inspect Soto's shoes at any time and to impose discipline if the shoes are being used for unauthorized purposes.

Dkt. 152, exh. 1 at ¶ 2.

Over the past five years, Soto has occasionally sought assistance from this court with the enforcement of the settlement agreement when he believed that he was not being provided what was promised him. *See* dkts. 150 (alleging prison staff not providing ice for foot pain), and dkt. 157 (alleging prison staff refused to deliver shoes he had purchased). In a more recent request entitled "motion for sanctions for breach of settlement agreement," filed on June 30, 2017, Soto asserted that correctional staff at the Waupun Correctional Institution (WCI) gave him "shower shoes" and refused to provide him with black velcro shoes and inserts when he and 30 other inmates were placed in segregation on June 13, 2017. Dkt. 163. According to defendant, Soto

did not get his orthotics immediately because of a backlog in the property department after the "large-scale shakedown" that led to Soto's segregation, but records showed that Soto's orthotics were returned on June 20, 2018. Dkt. 167. In a reply filed on September 14, 2017, Soto complained about not having his orthotics for three weeks, which resulted in him having foot pain, and argued that defendant should be sanctioned to prevent future violations of the settlement agreement. Dkt. 172.

Although Soto's previous filings implied that he had his orthotics back and that he was merely seeking damages, he filed letters on October 10 and November 13, 2017, stating that he did not have his orthotics or velcro shoes. Dkts. 174, 175. In the meantime, Soto was granted leave to proceed on medical claims related to the alleged inadequate treatment of his foot condition in a separate lawsuit in this court. Oct. 25, 2017 screening ord., dkt. 9, W.D. Wis. Case No. 17-cv-551-jdp (filed Jul. 17, 2017).

After some back and forth between the parties regarding a medical disclosure form and further investigation of the matter by defendant, the state informed the court on March 16, 2018 that property inventory records showed that Soto's shoes and insoles had been returned to him when he was released to general population on June 20, 2017. Dkts. 190-91. However, according to Chrystal Marchant, the health services manager at WCI, Soto contacted her on August 17, 2017 about his black, DOC-supplied velcro shoes being inadequate and causing his orthotics to elevate too high. Dkt. 191 at 2-3.

Although it is not entirely clear when or how it happened, it became clear in September or October 2017 that Soto did not have his orthotics or black velcro shoes. (Soto says the items were never returned after his stint in segregation, but the state's property records show otherwise.) To remedy the situation, Marchant approved new DOC velcro shoes for plaintiff in October 2017

3

and scheduled an appointment with an orthotics specialist for February 27, 2018, the soonest appointment available. *Id.* at 3-4. Soto was unable to find a pair of shoes that fit him at the prison store, but at the February 2018 appointment, an order was placed for custom orthotics and special shoes the orthotics specialist recommended for Soto. Marchant learned on March 12, 2018 that the shoes and orthotics would be ready in mid-April 2018. *Id.* at 5.

On June 14, 2018, Soto reported that he still had not received the orthotics and custom-fit shoes. Dkt. 198. On June 19, the state reported that the delay has been caused by the outside contractor's failure to complete the orthotics and shoes, but that Soto should receive them by the end of June 2018. Dkt. 199. In an order entered on June 21, 2018, I gave the parties until July 9 to provide a status report and supplement their submissions on whether there has been a breach of the settlement agreement and whether sanctions are available and appropriate. Dkt. 200. The parties agree that Soto received the orthotics and shoes around July 2, 2018. Dkts. 202, 203. (Defendant says that Soto received the items at his June 29, 2018 podiatry appointment, but Soto says he received them on July 2, 2018. *Id.*)

**OPINION**

Although Soto now has his orthotics and shoes, he seeks to pursue a claim for damages and seeks sanctions to compensate him and punish defendant for the year-long period during which he alleges that he was without them. As discussed above, it is not clear what happened to Soto's orthotics and shoes. Prison property records show that plaintiff received his orthotics and shoes after he returned to general population in June 2017, but Soto alleges that he never received them. In any event, after Soto made Marchant aware that his orthotics and shoes were missing in the fall of 2017, it took 9 to 10 months for Soto to receive replacements. However, much of that delay

4

was not the state's fault. The earliest appointment that Marchant could get for plaintiff was four months distant (in February 2018). Although Soto argues that health services staff should have somehow expedited the request, there is no reason to believe that they had any control over how quickly Soto could be seen by the specialist. In fact, the health services manager avers that she moved other inmates' non-urgent appointments in order to accommodate plaintiff. Dkt. 191 at ¶ 16. Then due to a mix up, the outside vendor took over four months to make the orthotics.

Soto's frustration is understandable, but given the circumstances, I do not find any of defendant's conduct sanctionable. A court has the inherent authority to impose sanctions for actions a party takes "in bad faith, vexatiously, wantonly, or for oppressive reasons," but Soto has not alleged or presented any evidence showing that the state's conduct rose to this level. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); *see also Johnson v. Cherry*, 422 F.3d 540, 548-49 (7th Cir. 2005). After being informed that Soto no longer had his orthotics, Marchant acted promptly in arranging for Soto to see a specialist and order new DOC-provided shoes. The fact that the appointment could not be arranged for four months and delays occurred in making the orthotics do not show bad faith on the part of the state. Soto argues that it is the state's fault that the orthotics went missing in the first place, but he has failed to allege or show that defendant intentionally lost his property.

Additionally, Soto's assertion that the state has repeatedly violated the settlement agreement and should be punished is unpersuasive. Apart from the incident giving rise to the current motion, Soto made only one potentially valid complaint about the prison not delivering shoes that his mother had ordered for him as permitted under the settlement agreement, and WCI responded quickly by delivering the shoes to Soto. *See* dkt. 162 (dismissing Soto's motion regarding breach of settlement agreement as moot). His earlier-filed motion alleging a breach of

the agreement based on the denial of ice for his foot was unfounded because the agreement did not provide for such treatment. *See* dkt. 156.

Although Soto also asserts that he should be awarded damages for breach of the settlement agreement, presumably as part of a breach of contract claim, it is not clear what damages he would be entitled to. Wisconsin does not allow punitive damages as a remedy for breach of contract claims. *Schwigel v. Kohlmann*, 2005 WI App 44, ¶ 10, 280 Wis. 2d 193, 694 N.W.2d 467 (citing *Autumn Grove Joint Venture v. Rachlin*, 138 Wis. 2d 273, 279, 405 N.W.2d 759 (Ct. App. 1987)). In addition, the settlement agreement does not provide for compensatory damages of any kind in the event of a breach. *Christensen v. Sullivan*, 2009 WI 87, ¶ 83, 320 Wis. 2d 76, 120, 768 N.W.2d 798, 820 (refusing to allow compensatory damages as remedy for breach of consent decree regarding prison conditions where agreement, which was product of extensive negotiation, did not contemplate monetary damages); *see also Handicapped Children's Educ. Bd. v. Lukaszewski*, 112 Wis.2d 197, 206, 332 N.W.2d 774 (1983) ("Damages in breach of contract cases are ordinarily measured by the expectations of the parties."). Soto has received what he is due under the terms of the settlement agreement, albeit after he should have.

Soto alleges that he suffered severe emotional distress as a result of defendant's breach, but "mental suffering, while recognized as an injury, 'has been held not a proper element of recoverable damages in actions on contract.'" *Christensen*, 2009 WI 87 at ¶ 86 (quoting *Koerber v. Patek*, 123 Wis. 453, 464, 102 N.W. 40 (1905) (finding prisoners failed to show that consent decree was of such a kind that serious emotional disturbance was particularly likely result)). Further, although Soto says that he suffered foot pain during the delay, he has not alleged or provided sufficient evidence of any compensable physical injuries. *Id.*

Because Soto has not shown that he is entitled to any additional relief apart from specific performance of the settlement agreement, I am denying his motion for injunctive relief and sanctions.

ORDER

IT IS ORDERED that plaintiff Jose Soto's motion for emergency injunctive relief and sanctions, dkt. 177, is DENIED.

Entered this 24th day of August, 2018.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge